oral argument this morning through use of video conferencing. It is in the matter of Lawrence Fisher versus the warden of Somerset SCI. Do we also have Ms. Freeland on the video? I am here. All right. Can you see me? I see you now. Thank you. Both are of our friends from Pittsburgh are participating by video in this matter, and we will first call upon counsel for the appellant, Mr. Robby. Thank you, Your Honor. May it please the court, my name is Assistant District Attorney Ronald Robby, Jr. I represent the appellants in this case. We have challenged the district court's conclusions that they were bound to consider a plea agreement was suppressed by a previous ruling by this court, and further, that the district court erred in concluding that prejudice ensued. Mr. Robby, let me, what I will consider anyway, cutting to the chase, or what I think is cutting to the chase. And that is, irrespective of what a panel of this court did the first time this matter was before the Court of Appeals for the Third Circuit, and irrespective of what the magistrate judge recommended and the district court adopted, do we know anything about the specifics of a possible or likely or whatever degree of probability one wants to use to describe an agreement between the district court and the appellant? Well, that is absolutely contrary to the import of my question. Your answer suggests there was no agreement. My question was, do we know anything about the specificity of an agreement, about the particulars of an agreement? So, the common off chalice, in that conclusion, is based upon inferred findings from this court's original opinion. Well, Mr. Robby, what about the language at the sentencing of Mr. Epps when the prosecutor explained to the court, defense counsel and myself have come to an accord with respect to a sentence that would be acceptable to this court? Your Honor, here is the problem, is that I know the meaning and import of these sentences, because in the co-defendant's case we had a hearing in the state court, and in that state court proceeding this was all dealt with. Unfortunately, that was not the case. So, when the district court in this case rendered its decision, it was based upon the cold record, based upon affidavits and the transcripts. Which decision, the earlier R&R by Magistrate Judge Bassoon adopted by the district court or the subsequent R&R of Magistrate Judge Pesto adopted by the district court? After Magistrate Judge Pesto's R&R. So, in both R&Rs there was never any testimony taken. There was never any opportunity for the court to make a credibility determination as to what those words meant. Oh, right. Now, wait a minute. I honestly at this point have no idea what it is you are arguing, Mr. Robby. In the first instance you said there is no agreement. Now, in response to Judge Ross' question, you seem to be conceding that there is an agreement, but coming closer to answering what was my first question, which was about details of any possible agreement, because there was no discovery. Which is it? There is no agreement in the sense that prior to the time that Mr. Epps testified that there was an agreement. There was not. And what happened subsequent to that was Mr. Epps pled guilty actually prior to the time that he testified. Mr. Epps won forfeits before the sentencing. And then Mr. Epps is sentenced ultimately in July. And what happens is at that point in time, the prosecutor and Mr. Perrino apparently came to some agreement, I guess. Mr. Robby, isn't he? For the life of me, I can't understand why you are not saying there was an agreement, or if there was an agreement, it happened so late in the game that there could be no prejudice. Your Honor, that's what I'm trying to make. The point I'm trying to make is any court agreement... That's the point you're trying to make, Mr. Robby. It happened after the time he testified. It could be based upon a number of things where Mr. Sachs could have decided that his case wasn't as strong as he thought. Maybe he thought that the guy answered the guilty plea. Maybe he thought the guy wasn't a big threat to the community. All the reasons where you could suggest to the trial court that he is entitled to a different type of sentence. The sentencing guidelines in Pennsylvania are just guidelines. Mr. Robby, we're here on nothing but an inquiry into prejudice. Isn't that the case based upon the R&R adopted by the state judge Besta? The court doesn't believe prejudice is a suit either. Counsel, is that because of the timing that you now have information about, which you did not have available when the appeal was filed? I just want to review the sequence. Our panel acts, goes back to the district court, the magistrate judge issues an R&R. After the magistrate judge issues an R&R, there's a state court proceeding in the codefendant's case where an evidential record is developed which identified the sequence of timing that led to the statement that Judge Roth was asking you about. And if that sequence is correct, is it your position there's no prejudice because this accord was reached after he testified, therefore, it could not be used to impeach? Is that correct? That's correct, Your Honor. In fact, Mr. Hapsen Okay, but let me ask you another question. Did there have to be an agreement at all given the charges against Mr. Epps, Mr. Epps' criminal history, the potential sentence that Mr. Epps could get for those charges, the proper interrogatories were filed by the defense asking for information on witnesses which would include this information, I believe, and even though there wasn't at that point an actual agreement, Mr. Epps was a very experienced criminal. The facts facing him of the potential charges and the request that he testify, isn't this in and of itself Brady material which should have been revealed to the defendant? That information was revealed. He had pending charges. He did have an extensive criminal record. What is ignored here is the fact that he identifies the shooter at the scene of the crime. He identified him at the coroner's inquest. He did not identify him at the scene of the crime. He said that the shooter was an unidentified black male. It was not until later when the police had had a chance to look at his criminal record that he I disagree with your interpretation, Your Honor. I mean, the point I'm trying to make is Didn't he not at the scene of the shooting say that the shooter was a black male without identifying him? Yes, Your Honor, but the point I'm trying to make is he had testified at least twice. He testified at the coroner's inquest. Yes. And what did he testify there? He testified that the shooter was a defendant. Yeah, and that was consistent with his testimony at trial, right? That's correct, Your Honor. And that testimony before the coroner's inquest was very early in the game here. When was it? I'm not sure of the dates, but it was well before the time of trial, well before the time he entered his guilty plea. What the focus of the earlier panel of this court was, was on, and these are the words of the panel, some sort of understanding of leniency. That's what Magistrate Judge Pesto referred to in part as a finding of fact, I believe, because the panel says, clearly tended to indicate that some sort of understanding of leniency existed between the Commonwealth and Epps with respect to his testimony against Fisher. Now, that language is there. That is law of the case as far as we are concerned, unless there were some extreme circumstances that required us to depart from it. It's law of the case consistent with Judge Schwartz's question. What specificity is there in that language or anything else in the decision of the earlier panel of this court with respect to the terms of an agreement or when such an agreement was reached or between whom such an agreement was reached? That information isn't in the record, Your Honor, as far as... Excuse me? As far as your questions... No, it's not. Right. There's nothing in the record about that, is there? No. Do you agree with the Magistrate Judge that there was, in fact, a finding by the prior panel that there was an agreement? Or do you look at the language that says, appeared to be alleged agreement, tended to indicate as more suggestive and not a finding? That's correct, Your Honor. I think that's my interpretation of that prior opinion because what that prior opinion was going for was, when it was out there on cause, it was dealing with the idea of whether or not Mr. Fisher could have returned to state court to exhaust a state court remedy. That's what the panel was looking at originally. And I was there for the argument, Your Honor, and it moved from cause to talking about prejudice. It seemed like the panel wanted to move in another direction. And if you look at that opinion, it talks about it being alleged, inferred. They never specifically find that it happened. They find that he couldn't have raised the claim in state court. Your Honor, the panel says, clearly tended to indicate that some sort of understanding of leniency existed. I mean, I don't know whether that's a finding of fact or not, but that's the language. And I agree with you, Your Honor. That does, it has, but that's the problem. It doesn't say one way or the other it's a finding. It says, tends to indicate, seems to appear. It doesn't actually, with any specificity, make that a specific finding, which is why I thought, and I argued, the district court could go beyond what they did. So what should happen here? Remand to the district court to conduct an evidentiary hearing? Yes, Your Honor, at a minimum. And wherein the district court can examine the exact sequence of events and make some credibility determinations for their own. Your Honor, so we're not standing here and I'm arguing about events that this court doesn't. You're asking me questions that I can't give you the answers to, because that piece of the record that you're asking for isn't before this court. That's precisely why I was asking the question. All right, we'll have you back on rebuttal. Let me ask one more question, if I could. The standard for cause and prejudice in a procedural default situation and in a Brady claim, are they the same cause and prejudice? Are the standards the same or different?  Your Honor, the commas position was that under Slutsker v. Johnson, there's a cause and then when you get to prejudice, you're actually looking at the underlying merits of the Brady claim itself, wherein you're going to look again at cause and prejudice. So the sequencing actually is a little different here under Brady than it would be in the mine run Brady case, isn't it? Yes, because Slutsker is actually the best example. Again, another decision by this court where I, it was again a Commonwealth appeal, and I was before this court, but wherein the alleged, it wasn't alleged, the suppressed evidence of any issue regarding that came first, and we dealt with the cause issue, and then again under, it was Judge Becker's opinion, Judge Becker then went beyond that and looked at cause and prejudice for the exact specific items that were suppressed, the police reports that were suppressed. So it's a two-step analysis that needed to happen. All right, thank you. We'll have you back on rebuttal, Ms. Freeman. Thank you, Your Honor. May it please the court, My name is Lisa Freeman, and I'm here on behalf of Lawrence Fisher. I want to start off by addressing some of the questions that came up during Mr. Wabi's argument, if that is okay with the court. A couple of things, and I think one thing that is significant before I get to the details of the deal is that the affidavits that are currently in the record from the two assistant district attorneys, Sachs, I believe it is, and Redoisos, those affidavits were obtained within a week of the magistrate Judge Pesto's R&R and submitted with the Commonwealth's objection. So that information... Redoisos prosecuted the homicide case. He did. He did. What do those affidavits tell us about the timing and terms of any agreement, if there was an agreement? Your Honor, I agree with you that those affidavits, they deny that there was an agreement and they say nothing about the timing. My point in mentioning the timing of their submission is that it belies the Commonwealth's suggestion this morning that the information was not available to it until after it filed the Commonwealth appeal on this case. Doesn't the heart of your case rest on the existence of an agreement, and if such an agreement existed, that it existed at a time that it impacted the testimony and or cooperation of EPS to the prejudice of your client? Yes and no, Your Honor. I think my case rested, and our allegation has always been that there was a deal, and we believe that's clear from the sentencing hearing, but I also agree with Judge Roth's statement this morning that whether there was in fact a deal does not mean, even if there were not a deal, it does not mean that the Commonwealth complied with Brady. There was still suppressed favorable evidence in the form of the fact that Mr. EPS took this 11th hour plea the night before trial. I don't think that it's necessary. You're saying there was prejudice in the mere fact of EPS' plea? Certainly, Your Honor, because if the defense counsel had known at the time of trial that Marlon EPS had pled guilty to pending charges on the eve of trial, the same line of questioning that would have been available to defense counsel had it learned of an actual deal would have been available to defense counsel at that time. The plea is a matter of public record. That's not something tucked away in a prosecutor's file. I agree with you that it's a matter of public record. That does not absolve the Commonwealth of the obligation to disclose it, especially when it happens on the eve of trial. The plea transcript indicates it was an open plea. There was no deal. He pled straight up. So the use of that information becomes quite small when he pled to everything, straight up, no deal. Well, I mean, as to credibility, particularly when you have an experienced defendant like Mr. EPS, can one infer that there is a certain knowledge of the criminal process in his mind when he's accepting an open plea that if he cooperates, it's going to be very helpful to him? Well, yes, Judge Roth, that's my point, that defense counsel would have had available to it precisely that line of questioning. How can that be your point, Ms. Freeland, when the experienced defendant who knows that by entering the plea, he very well may have that decision on his part redoubled to his benefit, but what he knows and what he expects is purely subjective? I'm not sure that I understand your question. I'll try and answer it as best I can. But it's in the head that Mr. EPS is not in the file of a prosecutor. That is exactly right. On cross-examination, right? Yes, that's my point. It's impeachment information one way or the other. What is the it's that is impeachment information? The fact that Marlon EPS entered a guilty plea on the eve of his testimony in Lawrence Fisher's case is information that could have been used. Now, don't get me wrong, Your Honor. I don't believe that's all we have here. I still believe that we have evidence of a deal, and I also believe when I briefed to this court that a prior panel of this court indeed found that there was an agreement, that there was a finding. And I understand the questions from the court to Mr. Wabi about whether it was inferential, whether it was just a suggestion, but I will remind the court of the preponderance of the evidence standard, which simply states that the petitioner need only tender evidence from which a fact finder could infer by a preponderance of the evidence, and that the fact finder simply needs to believe that the existence of the fact is more probable than its nonexistence. But if our panel was talking about an alleged deal, how could you say they made a finding to that standard of proof that you just articulated? The information that was before the prior panel, that was specifically the fact of the 11th hour guilty plea and the statements that were made at the sentencing hearing of Marlon Epps, where at that point it was clear that an accord had been reached, the prior panel of this court, absent other information, looked at what was available, and often in Brady cases, as you all know, information is wanting. The court took the information, read the transcript, and said that in our opinion, under the preponderance of evidence standard, and I agree that they didn't specify the standard, but that is the standard that applied, they did use the tended to establish language, that they in fact found from the information that was presented to them that it was more likely than not that this fact was true. And that finding is binding on this court. And if I could, Your Honor, just make one further point. What finding? When do appellate courts make findings? Their finding that the information that was before it tended to support the existence of an agreement as opposed to the nonexistence of the agreement, and that finding is made in the context of the court's ruling on whether Mr. Fisher had established cause. The court is required to determine whether or not favorable evidence was suppressed. And the court took the information that was before it, and it said in our opinion, the existence of this fact, that is that a deal existed between EPS and the Commonwealth, is more likely than not than its nonexistence. And this court's law of the case jurisprudence has made clear that the law of the case applies to explicitly found facts as well as those that are inferred and made necessarily by the court's legal rulings. And that's precisely what happened here. Can I ask you, are you familiar with the state court proceeding your adversary described as occurring after the magistrate judge's ruling, where there was an evidentiary hearing of some sort? I'm familiar that it occurred. I did not attend the hearing, nor did I hear the testimony of the prosecutors. The evidence that's been presented to me was in the two affidavits. And I do think that, I mean, I know that I pointed this out in my brief, but I'd like to say it again, is that these affidavits were presented seven years into this case. There was every opportunity for this information to be brought forward, and I'm discouraged here today. Let me ask again, what is the information in the affidavits? The information in the affidavits is the prosecutor from Marlon Epps' case and the prosecutor from, that was the prosecutor in Lawrence Fisher's case, Mr. Redoyses, saying that there was no agreement. There was no agreement for competency. So to bring this inquiry into clearer focus, your position necessarily would require this panel to disbelieve two officers of the court who have signed affidavits declaring there was no agreement. No, Your Honor, you don't have to believe them or disbelieve them. My position is that you never reach them. Under the law of the case doctrine, and under, I mean, under the equities of the case, there is absolutely no reason why this court should at this point consider the affidavits of two prosecutors that could have been obtained within an hour of the filing of the petition for habeas corpus that were not obtained and filed until seven years later after the Commonwealth had lost on the merits. There is absolutely no reason that this court has to determine whether they are truthful or whether they are false because this case should end here with this appeal and a ruling from this court that it is bound by the law of the case to determine that favorable evidence was in fact suppressed and it should affirm the district court's ruling on prejudice. That's exactly what should happen here. These affidavits should, if they had been submitted seven years ago, maybe we would be talking about something else. But in other contexts, especially when petitioners are raising evidence that they have not presented through the exercise of due diligence, this court has had absolutely no problem in saying, I'm sorry, it's too late, we don't care if you're innocent, we don't care if this fact would undermine the confidence in the verdict. The rules say what they say, and you're too late. And this court should apply that with equal force in these circumstances. Can we focus on the timing issue that we were discussing with your adversary, the timing of the alleged deal, when it happened, when it was available or knowable. Would you agree that if it was, if an accord was reached at the time of the sentencing transcript, where we have that language that you've talked about in your brief, and that was the only time it was reached, would you agree then the usefulness of this as a cross-examination material would diminish if there was no understanding? And so don't we need more of a developed record to know what the impact of such material could be based upon the timing of the agreement? Your Honor, given the critical position of Marlon Epps in the context of this case, had his credibility been diminished in any meaningful way, it would have impacted this case. And I think that the reason I say that is you look at the quality of the other evidence and the other witnesses in this case, it was all over the place. If trial counsel had been able to do anything with Epps, it would have been extremely helpful. But I also want to speak to the timing in this regard and go back to something that Judge Roth said about Marlon Epps. It is unbelievable, this court should find it unbelievable, that someone with the experience of Marlon Epps in the criminal justice system would have, in fact, entered an open plea on the eve of trial to charges under which he would have faced a 40-year sentence. Ms. Freeland, as an old State Court DA, all I can tell you is you're wrong. That happens, and it happens frequently, with very experienced criminal offenders. They know what they can do, and they know what the system may do to reward them, and often they don't need a deal. That's just the way it works. Isn't that exactly the point which is critical, that they don't need a, quote, agreement, they don't need a, quote, deal, because they know if they cooperate, they are going to get a deal, and that information is important for cross-examination in the questioning of Mr. Epps at the Fisher trial. Well, Judge Roth, that is the point that I'm making. I think Judge Smith disagrees that maybe they do enter guilty pleas facing 40 years without knowing or having an understanding... No maybe about it. No maybe about it. I mean, you know, I've never been a state prosecutor. I only see things from the chair in which I sit, and that has not been my experience, and I trust that that has been Judge Smith's experience, but I do think that the critical point in this case, and I don't want to dismiss this court's interest in learning more, but I do think that there are circumstances, and this case presents one, where the time for that has passed. We came forward with our evidence. There was an opportunity. There are things that we can't do now to establish that there was a deal that might have been available had it been seriously challenged seven years ago, but that's not what happened. I also want to point out that the Commonwealth had a continuing duty through the PCRA proceedings and into these federal habeas proceedings to provide Mr. Fisher and myself with favorable evidence. That sentencing transcript and the accord that was reached was never presented. There are equities in this case that should lead this court, as I said before, to understand and follow what the prior panel did and not to turn back the pages and offer the Commonwealth an opportunity to fix something that it could have fixed years ago. And I say that from the position of, as Judge Smith just said, I'm not coming to this with blinders on. I understand that it's going to be very difficult for a federal judge to disbelieve two prosecutors coming forward and saying there was no deal, even when that should happen. It's still very difficult. So I understand the obstacles that I would face if this were remanded for a hearing, but that all said, I still believe in the legal principles that I briefed to this court. The law of the case applies. The prior panel reached this. The only issue on the table right now is prejudice, and the R&R that was adopted by the district court sets it out in excruciating detail very well to show this court just how Mr. Fisher was prejudiced by the suppression of evidence in this case, and this court should affirm that ruling. Thank you, Ms. Phelan. Mr. Awabi, I didn't ask at the outset, but I assume you reserved some time for rebuttal. I apologize, Your Honor. I meant to say I did reserve three minutes. Correct. I wanted to, I'm sorry. And just to echo your sentiment, Judge, I mean, when she talks about who's facing 40 years, that's 40 years if you calculate the statutory maximum against every count and none of it merged, which is basically impossible because there were drug offenses. And to echo your point of view is that a lot of times defendants enter guilty pleas, open pleas, in the hopes of throwing themselves in the mercy of the court in knowing that at least in Allegheny County, certain offenses aren't going to send them to state prison. It's just not realistic. So, I mean, there are instances where defendants will do things where you think that that's illogical, but someone who's experienced in the system knows how it works. Well, they'll often do it because their defense counsel will tell them, irrespective of the existence of any deal or in the absence of any deal, look, I mean, this is going to be to your advantage. I know this judge or I know this prosecutor and this is what's going to happen. And shouldn't that information be revealed under the ongoing interrogatories that have been filed in this case? Your Honor, I don't know what Mr. Perino's discussions were with Mr. Epps because Mr. Perino is deceased. So, as far as what conversations- That's one of the problems that Ms. Freeland just mentioned, the prejudice by the passage of time between the time these events happened and the time you filed your affidavit. Mr. Perino had passed away long before this happened. He died of a drug overdose many years ago. It was probably when I first started practicing in the district attorney's office. He might have been there for two or three years when I was a prosecutor. So, he's been deceased far longer than litigation in this case. I don't know the exact date, but I'm just telling you I know he's been dead for a number of years. You have further rebuttal, Mr. Robby? Your Honor, I simply believe that the right thing to do at this point is send it back to develop a further record. Again, I do believe there was a transcript filed in the Dorsey case. Judge Manning issued an opinion, all of which that deal with the questions you're asking. And certainly, Judge Pesta would have liked to have had that opportunity in front of him. And certainly, Judge Gibson would have as well. So, I think sending it back to at least develop the evidentiary record is the correct solution at this point, if this court wishes to do so. Very well. Thank you, Mr. Blobby. Thank you, Ms. Freeland. An interesting case. We'll take it under investigation.